IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| ANDERSON PLANT, LLC,<br><br>               Plaintiff,<br><br>     vs.<br><br>BATZER CONSTRUCTION, Inc.; FIDELITY<br>& DEPOSIT COMPANY OF MARYLAND,<br><br>               Defendants.<br>_____/<br>AND RELATED COUNTER/CROSS CLAIMS<br>_____/ | No. 2:13-cv-02109-KJM-CMK<br><br><br><br><br><br>ORDER |

This matter is before the court on defendants' motion to stay action and compel arbitration in this breach of contract case under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–4. Notice of Mot. & Mot. for an Order to Stay Action & Compel Arbitration, ECF 6. Plaintiff opposes the motion, arguing defendant Batzer Construction was not a contractor licensed by the State of California, the agreement containing the arbitration clause selects California law, and California law prohibits the arbitration of an important issue in the contract dispute: whether Batzer Construction was a properly licensed contractor. Pl. Anderson Plant, LLC's Opp'n to Defs.' Mot. to Compel Arbitration ("Opp'n), ECF No. 11. The motion was decided without a hearing. For the reasons below, defendants' motion to compel arbitration is GRANTED and this case is DISMISSED.

1

I.      BACKGROUND

Defendant is a construction company that in 2011 agreed to help refurbish plaintiff's seven-megawatt biomass-fired power plant. The parties entered into a contract that included the following arbitration clause:

> Any controversy or claim arising out of or relating to this Contract or its alleged breach which cannot be resolved by mutual agreement or mediation shall be settled by binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association in effect on the date of the Contract, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The Parties to this Contract expressly waive their rights to utilize federal or state courts to resolve differences arising out of this Contract.

Decl. Darien Louiselle, Ex. A, at 25, ECF No. 9-3. The contract also included a choice-of-law provision, stating that the contract "shall be governed by the law of California." *Id.* at 26.

Importantly for the pending motion to compel arbitration, the choice-of-law provision also contains a clause expressly adopting California law governing arbitration: "The Contract shall be governed by the law of California, *including California law governing . . . arbitration proceedings*." *Id.* (emphasis added).

Each party claims the other breached the agreement: defendant claims plaintiff did not pay the amount due, Decl. Darien Louiselle ¶ 3, ECF No. 9-2; plaintiff claims defendant did not complete the project in time for the price agreed, Opp'n 3:15–20, ECF No. 11. In 2012, defendant filed a construction lien against plaintiff's property, and plaintiff sued defendant in Shasta County Superior Court on the contract. Decl. Raymond M. Buddie ¶ 2, ECF No. 13. In light of the agreement to arbitrate, plaintiff and defendant stipulated to stay the case pending mediation and arbitration. *Id.* ¶ 3. After mediation failed in 2013, the parties began arbitration proceedings. *Id.* ¶¶ 6–7.

Plaintiff asserts it then "discovered for the first time that Batzer was not properly licensed as a California contractor at the time of its work on the [power plant]." Opp'n 4:10–12, ECF No. 11; *accord* Decl. Buddie ¶ 7, ECF No. 13. Plaintiff believed "the preliminary issue of Batzer's licensure must be resolved in the Courts, and not [in] arbitration." Opp'n 6:3–6, ECF No. 11. Plaintiff asked defendant to stay arbitration to allow the Superior Court resolve the licensure question, but defendant declined. *Id.* at 6:3–16. Plaintiff then filed the instant lawsuit in state court, Notice of

1  Removal ¶ 1, ECF No. 1; defendant timely removed to this court and filed the pending motion to
2  compel arbitration.
3  II.     ANALYSIS
4          Defendant moves to compel arbitration, arguing the contractor-licensure issue "arise[s]
5  out of or [is] related to the Contract," and that plaintiff is required to arbitrate this dispute under
6  applicable federal arbitration law.  Mem. in Supp. of Order to Stay & Compel Arbitration ("Mot. to
7  Compel Arb'n") 6:17–23, ECF No. 9-1.  Plaintiff points to the contract's choice-of-law provision and
8  argues (1) California law applies and (2) under California law, disputes over contractor licensure
9  implicate important public policies and therefore cannot be arbitrated.  Opp'n 1:11–2:16, ECF No. 11.
10         The ultimate question this court must answer is one of arbitrability, whether the
11 contractor-licensure issue can be arbitrated.  Before answering this question, the court must decide
12 whether California or federal law governs the decision.
13         A.      Law Governing Arbitrability
14         The first issue is whether California or federal law applies to determine the arbitrability
15 of the contractor-licensure dispute.  The agreement provides that California law governs the contract,
16 including California law governing "arbitration proceedings."  Decl. Louiselle, Ex. A, at 26, ECF No. 9-
17 3.  Plaintiff argues this contract language evinces the parties' intent that California law would apply to
18 the arbitrability question.  Plaintiff cites the U.S. Supreme Court's decision in *Volt Information
19 Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989), for the
20 proposition that if "the parties have agreed to abide by state rules of arbitration, enforcing those rules
21 according to the terms of the agreement is fully consistent with the . . . FAA."  *Id.* at 479.  Defendants
22 counter by pointing to the language in the arbitration agreement stating the parties "expressly waive[d]
23 their rights to utilize federal or state courts to resolve differences arising out of" the contract, Decl.
24 Louiselle, Ex. A, at 25, ECF No. 9-3, as evidence that the parties intended to arbitrate this dispute
25 notwithstanding their selection of California law.
26         The Ninth Circuit has held that "contracting parties have the power to agree to apply
27 non-federal arbitrability law."  *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 919 (9th Cir.
28 2011).  However, this rule does not resolve defendants' motion.  Even though the parties had the power

3

to opt for California law to apply to questions of arbitrability, the court must still decide whether the parties in this case in fact agreed to apply non-federal arbitrability law.

The facts and holding of the Ninth Circuit in *Cape Flattery* are instructive and inform this court's decision here. In *Cape Flattery*, the parties agreed to arbitrate all disputes arising under an agreement to salvage a vessel that had run aground on a submerged coral reef in Hawaii, and they selected English arbitration law to govern. 647 F.3d at 916. The agreement stated, "Any dispute arising under this Agreement shall be settled by arbitration in London, England, in accordance with the English Arbitration Act . . . ." *Id.* Nonetheless, the boat owners sued the salvage company in federal district court in Hawaii. The district court refused to apply English arbitrability law, and the Ninth Circuit affirmed. *Id.* at 916–17.

The Ninth Circuit held "courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law," *id.* at 921, relying on the Supreme Court's decision in *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995). In *Kaplan*, the Court adopted a clear-statement rule to determine whether an agreement indicates that arbitrability questions are for the arbitrator rather than the court, reasoning "the . . . question—the 'who (primarily) should decide arbitrability' question—is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." 514 U.S. at 945. In adopting a similar clear-statement rule in the arbitrability choice-of-law context in *Cape Flattery*, the Ninth Circuit reflected this language: "Like the question of who should decide arbitrability, the question of what law governs arbitrability is 'rather arcane.'" 647 F.3d at 921. The court explained, "In negotiating an agreement, parties are just as unlikely to give thought to the applicable arbitrability law as they are to give thought to the person determining arbitrability." *Id.* Assuming simply because the parties adopted non-federal law to govern interpretation of the contract and the procedures for the arbitration, that the agreement also "provid[es] for non-federal arbitrability law," would undermine the parties' intent: "parties could be subjected to a foreign arbitrability law when they reasonably thought federal arbitrability law would apply." *Id.*

The court in *Cape Flattery* applied the "clear and unmistakable evidence" standard to the arbitration agreement in that case, which stated: "[a]ny dispute arising under this Agreement shall be

1 settled by arbitration . . . in accordance with . . . English law." *Id.* The court concluded that federal
2 arbitrability law nonetheless applied, reasoning that "English arbitration law clearly applies" under this
3 provision, and that "English law and practice are to be applied by the arbitrator. However, the
4 agreement is ambiguous concerning whether English law also applies to determine whether a given
5 dispute is arbitrable in the first place." *Id.* The court concluded that in the face of "such ambiguity,"
6 "federal law applies to determine arbitrability." *Id; see also PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193,
7 1202 (2d Cir. 1996) (holding "a choice of law provision will not be construed to impose substantive
8 restrictions on the parties' rights under the Federal Arbitration Act").

9    Here, the choice-of-law provision selects California law to govern the contract and
10 California law is to be applied by the arbitrator; however, the agreement is silent as to whether
11 California law "also applies to determine whether a given dispute is arbitrable in the first place." *Id.* As
12 in *Cape Flattery*, plaintiff cannot point to "clear and unmistakable evidence" that the parties agreed to
13 apply non-federal arbitrability law. *Id.* Moreover, the contrary conclusion -- to apply California law,
14 which prohibits the arbitration of contractor-licensure disputes, -- would contravene the parties'
15 expressed intent to "waive their rights to utilize federal or state courts to resolve differences arising out
16 of" their contract in favor of arbitration. Decl. Louiselle, Ex. A, at 25, ECF No. 9-3. Federal law
17 governs the arbitrability question in this case.

18   B.  <u>Applying Federal Arbitrability Law</u>

19    The ultimate question to be decided is whether the parties' contractor-licensure dispute
20 is subject to arbitration. Under federal law, it is well established that if "the contract contains an
21 arbitration clause, there is a presumption of arbitrability." *AT&T Techs., Inc. v. Commc'ns Workers of*
22 *Am.*, 475 U.S. 643, 650 (1986). A motion to compel arbitration of a "particular grievance should not be
23 denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an
24 interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.*; *see*
25 *also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991) ("Under
26 the Federal Arbitration Act . . . any doubts concerning the scope of arbitrable issues should be resolved
27 in favor of arbitration . . . ." (internal quotation marks and citation omitted)).
28 /////

"It is also well established that '[w]hen deciding whether the parties agreed to arbitrate a certain matter courts generally should apply ordinary state-law principles that govern the formation of contracts.' Only disputes 'that the parties have agreed to submit to arbitration' should be arbitrated." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284–85 (9th Cir. 2009) (internal alteration and citations omitted) (quoting *Kaplan*, 514 U.S. at 944).

In this case, the language of the contract leaves little doubt that the dispute is subject to arbitration under applicable federal law, and plaintiff does not seriously challenge this point except to argue California law should govern. The arbitration clause provides: "Any controversy or claim *arising out of or relating to* this Contract or its alleged breach which cannot be resolved by mutual agreement or mediation shall be settled by binding arbitration." Decl. Louiselle, Ex. A, at 25, ECF No. 9-3 (emphasis added). The Ninth Circuit has specifically interpreted the language "arising out of or related to," when used in an arbitration clause, to indicate that the scope of an arbitration clause is "broad and far reaching." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). This dispute centers on whether plaintiff's obligations to perform under the contract were relieved by illegality, namely, defendants' construction work allegedly performed without a valid California contractor's license. The court finds this claim is within the scope of the agreement to arbitrate.

Moreover, because defendant does not specifically challenge the validity of the agreement to arbitrate, and instead argues only that "illegality . . . renders the whole contract invalid," plaintiff's argument "does not prevent [this] court from enforcing [the] specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2778 (2010). Finally, plaintiff's argument contained in a footnote, that the FAA should not "be applied to override the strong California policy of protecting the public from unlicensed contractors," Opp'n 15 n.5, ECF No. 11, is unavailing. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Supreme Court "rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action." *Id.* at 446. The Court held, "we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on 'Florida public policy and contract law.'" *Id.* Here, as in *Buckeye*, plaintiff's challenge
/////

to the agreement based on California public policy "should therefore be considered by an arbitrator, not a court." *Id.*

### III. DISMISSAL OR STAY

The Ninth Circuit has held that if a party petitions the court for a stay under 9 U.S.C. § 3 of the FAA, the court has discretion to dismiss the action if all of the claims before the court are arbitrable. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that even though section 3 of the FAA, by its terms, only authorizes the court "to grant a stay pending arbitration," section 3 does not "limit the court's authority to grant a dismissal," and affirming district court's dismissal of the action where all claims were held arbitrable). In similar circumstances, a sister court has dismissed an action, over the plaintiff's objection, because all the claims were subject to arbitration. *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1178 (C.D. Cal. 2008). That court reasoned: "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration . . . ." *Id.* (emphasis in original) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

Here, the court finds dismissal is warranted because, for the reasons set forth above, all of the issues raised by plaintiff are subject to arbitration. Because "all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose." *Alford*, 975 F.2d at 1164. No efficiencies would be achieved if this case were to remain on the docket as a stayed matter until arbitration concludes, because the arbitrator's award will be binding on the parties. Moreover, even if the parties seek confirmation of the award, "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy . . . ." *Id.*; *see also Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("[I]n the majority of cases the parties to an arbitration do not obtain court confirmation.").

/////
/////
/////
/////
/////

IV.     CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration (ECF No. 6) is GRANTED and the case is DISMISSED WITHOUT PREJUDICE.  The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated:  February 26, 2014.

_____
UNITED STATES DISTRICT JUDGE